The next case for argument is 22-1581, City of Wilmington, Delaware v. United States. Yes, whenever you're ready. Is that Wilmington water or D.C. water? Your Honor, I did not ask. May it please the Court, Paul Niffler representing Appellant. This is a Clean Water Act case. The Supreme Court held in Consolo v. Federal Maritime Commission that without specific statutory authorization, de novo review is generally not to be presumed. However, the Court of Claims below applied de novo review. There was no statutory basis for that, and therefore that was a clear legal error. Explain to me what effect that has and what you're talking about here. Sure, so that effect had multiple impacts. The first is because under de novo review, nothing matters with what the United States did, said, or evidence that occurred before the first day of trial. Therefore, the Court did not look behind the first day of trial to determine, for example, whether the United States could have appealed the stormwater charges that were assessed after Congress changed the law in 2011. There were 73 days between the – So I don't understand what de novo review – what do we have to decide about de novo review? What is the impact of that in terms of ascertaining the result in this case? Right, so one of the things that you say about de novo review is that as a result, the court below improperly excluded evidence about a 2008 EPA publication, which said the city's methodology was fair and equitable. How can a statement by one federal agency be binding on another? What kind of authority do you have for that? Your Honor, I would point back to – first, I would point back to George A. Fuller v. United States, which is a court of claims case from 1947, where prior to the instance where de novo review applied in cases, an admission by the United States is binding. How is that an admission by the United States? Come on. It's a factual admission, not a legal one. No, it isn't. It's a conclusion. Well, the issue there is there hasn't been an administrative proceeding that resulted in that conclusion. It's simply a statement. So you're challenging the exclusion of that? And up here, do you know what our standard of review is for the trial court's decision? Yes, so the finding of fact review for clear error. Evidentiary decisions are reviewed on abuse of discretion. Okay, so you're saying he abused his – is that the issue you want to present to us, is your lead issue, whether he abused his discretion in not allowing that particular article? Yes, Your Honor, because the problem is that by refusing to accept that, this court – Do you hear the judge's question? Sorry, Your Honor? Judge Crost asked you if – is that what you want to present as your lead argument? It is, Your Honor, because it frames the entire litigation. Okay. So the issue that we have here is we're ultimately trying to determine whether the charges assessed on these properties were reasonable, and the United States agency in charge of managing stormwater utilities was recommending that stormwater utilities all across the country follow Wilmington's lead because the way that they were doing it resulted in charges that were fair and equitable. And so the court instead below determined that it should have no weight to it when, in fact, this court and the Supreme Court has ruled previously that a prior contemporaneous statement by the United States – Can you just give us the site for the Court of Federal Claims' opinion in that regard, just so we can know what he said? Sure, it's Kourkouris v. Secretary of the Health of Human Services. No, no, no. What in the Court of Federal Claims' opinion were he treated? Oh, that particular statement by the court – well, it's not in the actual original opinion. It was one of the earlier opinions where the court questioned whether it was appropriate to – Huh? Do we have that opinion in our appendix or in our – it's not – I'm just – do you have it there? Do you have it there as a site? I did. May I address that in the rebuttal? Sure, sure. Thank you. Yes. So when those cities adopted that methodology as fair and equitable, did they also say in their adoption that it was reasonably related? Reasonably related to? Yes, to the charge incurred. Yes, so the basis was that – the idea was that all the charges – all the properties were being charged based on their contribution to pollution, and the entire setup was described in a way to establish that the charges were fair and equitable based on the pollution that they're contributing. And so it's not the exact same language that was used by Congress in 1323. No, it's not. Right? But at the same time, it is factual evidence that goes to establishing that this was – that this met the requirements of 1323. What did the 2008 FDA publication actually endorse? Was it the use of these land use tax record classifications as a proxy for matching up against the classifications in the Chow study? It did, Your Honor. It described exactly the process by which Wilmington used this to assess charges, and that is the process that was a fair and equitable way to assess charges. You say it's – we call it a publication. Was it an informal handout? What makes it a – what kind of publication was it? It – well, I – Was it out for review and comment? I think the disclaimer at the end said that the document is not a law or regulation. So this – again, this – Was it a handout? I mean, what was it? This is Appendix 1082. Press release. So – This was before the 2001 amendment, right? 2011, yes, Your Honor. I did not say the 2001 amendment. Sure. Okay. So next, I would like to then turn to the 1323A. In 1977, Congress amended that to include a first sentence to declare that the federal government shall be subject to the requirements, administrative authority of – Yeah, nobody's disputing that. I mean, right, there's no dispute as to what the statute says or that the government has some obligation under the statute. The government's not saying it doesn't, right? With regard to the requirement for interest, there is a dispute. Yes. And that is why when it says local governments respecting the control of vapor and water pollution, the second sentence clarifies that these local requirements meant both substantive and procedural. So you're talking about the interest issue now? The interest issue doesn't come into play unless you win, right? It does not. But at the same time, this general waiver, it is our position that what it effectually does is put the United States in the position of every other non-governmental entity that owns property in the city. And so that is why they are subject to all the same requirements, all the same procedures. I mean, the language in Shaw is in the absence of express congressional consent to award the award of interest separate from a general waiver of immunity to suit. The United States is immune. So you're talking about maybe a general waiver of immunity, and the Supreme Court specifically spoke to that, and they said that's not enough. So the general waiver is found in the first two sentences in order to allow the suit. It is the third sentence that provides the separate waiver for interest. And it is that basis where the United States uses very broad language, and there is really no plausible – You mean the United States, you mean Congress? Congress, yes. There's no plausible construction for 1323A with broad language, these three sentences, can be read to exclude interest. And that's why it is our opinion that the United States should have been held to the local requirements for paying interest on delinquent stormwater charges, given that they are a property owner in the city of Wilmington. Well, who's got the burden of what? You act like the government had to prove that it didn't have to pay interest, as opposed to Shaw saying that you have to have an explicit waiver of sovereign immunity in order to hold the government liable for interest. Well, it is – so in our – it is Wilmington's position that when Congress enacted 1323, the United States simply became another property owner, and they were subject to all of these requirements. They were subject to the requirements to pay or to step forward and contest the charges in some form or another. They did not do that. Well, that's another issue, right? Whether they were compelled to enforce the requirements that you say – they say which are permissive, right? Well, any appeal is permissive. I mean this appeal was permissive. The issue is if we wanted to get them to pay later, we had to appeal. So the issue in this case is whether – So they were – is it your contention that in the – because they did not exhaust that appeal process, we don't have jurisdiction, the Court of Federal Claims didn't have jurisdiction over this issue? No. The United States is trying to raise an affirmative defense that there were issues that they claimed – they said that they would like to have raised in the Court of Claims below. They didn't, but they wanted to. And the issue before the court was whether they would be allowed to establish that that failure to exhaust should be excused. And it is our position that that is where this issue comes into play, is that the United States wishes to put forward evidence, and that's what their affirmative defense was about. The burden is on them to establish that their failure to exhaust should be excused. Can you preface this little discussion here a minute ago by saying that they didn't proceed on that affirmative defense? They asked the court to go ahead and rule on that. However, the problem is they didn't say what they would appeal. We don't know what they would appeal. We don't know what evidence that they would have raised in order to assert this appeal. And on top of that, they have failed to establish why they could not have appealed before the charges were assessed. And under Wilmington's ordinance, no retroactive charge corrections can be applied after the charge has been assessed. They had 73 days after the amendment was entered. They had three months after that they could have for the second round of charges. They didn't. There were ten years in which the United States could have appealed and did not, including after 2018. And what is the consequence of their failure to appeal? Their failure to appeal, then, is that their affirmative defense must fail because they have failed to carry their burden of establishing that their failure to exhaust administrative remedies can be excused. Can I ask you just about the 2008 FDA publication again? My question was, is there something in this publication that endorses Wilmington's usage of land use tax classification records as a proxy for relating to the coefficients used in the Chow study? Is there something in this? Because I don't see it. I thought I heard you say, yes, that's what this publication endorsed. Yes, Your Honor. It's on page appendix 1082. The remaining properties in pervious areas are estimated by applying predefined stormwater coefficients to the total property area. The property area, then, is obtained from the property records. Okay, so this is a little cryptic on actually endorsing the specific point I was trying to ask about. Yes, there's a previous discussion about the reliance on government records. The tax records? Yes, the property use records. Your Honor, just very quickly, one thing I want to get to, one last point. Wait, you haven't answered that question. This is a case study. There are other case studies. Correct. How is this case study different than all other case studies? What other case studies in the record are we talking about? Tacoma, Park, Maryland, stuff of Virginia. Why is one more important than the others? They're not. The point is that EPA holds these out as an appropriate way to assess charges. All right, with that, Your Honor, if there's no more questions, I will reserve my time. Thank you. Counsel, Judge Weld wasn't finished. I apologize, Your Honor. Where did they use the word appropriate? I may have misspoken. I apologize, Your Honor. Okay. You can do that, then, on your response. Thank you. May it please the Court. The trial first decision should be affirmed. Can I just ask you some preliminary questions? Absolutely. I'm sorry to throw you off speed, but there are just some general things that aren't in the record, and if you don't have a firm answer for me, that's just fine. I'm just interested, which is this provision, did the same standards and the same tests in terms of reasonableness, et cetera, apply to every private property owner? I mean, the statutory provision says the government has to do what everybody else has to do. That's an excellent question, Your Honor. The provision at issue, the federal facility section, applies a standard that is specific to federal facilities. Federal facilities under 1323A are required to pay reasonable service charges, and those are charges based upon a fair approximation of that federal property's proportionate contribution to pollution. So that is a standard that is specific to federal facilities. The reason I ask is because somewhere in that middle of that paragraph under A, it says to the same extent as any nongovernmental entity. Yes. But why would a nongovernmental entity be under this federal facility section? Right. I think the idea for the 2011 amendment, which this is a result of, was that prior to 2011, you had federal facilities, the federal government, in several instances, which I cited in my brief, who were not paying stormwater charges on the basis that it was an impermissible tax, and therefore this forensic clause did not allow that, and the courts largely agreed. So in 2011, Congress amended that and wanted to be clear that the federal government is going to have to pay stormwater charges just as nongovernmental entities are responsible for paying these charges. But it also drafted and included this specific standard by which it's not just a general standard by which you pay, but it's specific to your proportionate contribution to pollution, a fair approximation of that. And that's where the city of Wilmington, in this case, failed, because their case in chief was not focused at all on proving that the charges at issue, that the runoff coefficient that we talked about, which estimates the impervious error, was in any way linked to the federal properties in question. Instead, they were answering an irrelevant question, which is, is the use of these runoff coefficients generally reasonable? That's neither here nor there. So what more did they have to do? I mean, they have the tax records, and then they have the 62 study. So did they have to do on a lot-by-lot basis? Did they have to make an independent determination? No, well, in this particular case, they had to establish a relationship between the coefficient that they used and the property. So in this particular instance, the city's methodology was based upon stormwater classes. So they were linking the stormwater class to a particular specific runoff coefficient. And so I imagine in most instances that would be relatively non-controversial. If you have a government stormwater class, a lot of government buildings like this, concrete and have roofs and the runoff coefficient that's associated with that, 0.95, that's relatively easy to assume that most of the buildings in that stormwater class are tied to that particular runoff coefficient. The problem here is that the city of Wilmington placed these federal properties, which are 270 acres of dredged disposal facilities, in a vacant stormwater class. And that vacant stormwater class, as the city commissioner testified at trial, at appendix page 143, contained a whole variety of different types of land cover and sizes. It could contain... How granular does it have to be to be a fair approximation? I mean, we could be talking about studies and analysis that far exceed what these fees ever bring in, right? It doesn't have to be mathematical precision. We're not saying that they have to prove that it was exact. Isn't the government's position that the city, in the case of federal properties, at least has to take a look in order to determine whether what they're saying about that parcel is, in fact, correct? So that if, for instance, because it's dredged runoff facilities, if it was all marshland, it would be different than if it was all a big pile of dirt. Yes, or concrete, like this federal building. And so in this instance, because they placed these... But they have to look. Yes, Your Honor, I would say in this instance they would have to look. Maybe in all instances. If you have instances where the stormwater class, the properties within that class were fairly similar in terms of the type of... Fairly. Fairly similar, right. So that you could reasonably assume that... So is it enough to look at... They've got five properties, and it's like 270 acres. There's a lot of stuff there. Correct. So going to each of the five properties and then making an assessment of the property in general? Or are you saying that it has to be more granular? Every acre or every... It doesn't have to be every acre. It doesn't have to be every property. The point is, they provide evidence that this is the type of land that is at issue. And marry that up through an expert saying, well, this type of land would generally have this type of runoff. They don't have to provide, as you said, the extra granular acre by acre. Not at all. It's a higher level of generality. They couldn't even prove that the properties bore any relation whatsoever to the coefficient that they used. And that was because that stormwater class, the vacant class, could contain concrete. It could contain marshland. Why do we have to get into that? Because isn't the question in this case whether the city government has to at least take a look? Because if they haven't done that, then we don't get into the question. We don't have to get into the question of how much more they have to do. Because they didn't take a look, as I understand from the record. That's correct. The record is clear that they did not visit the properties. Their experts did not visit the properties. In fact, their experts. But if that's the standard, then are you not then logically contending that the city of Wilmington has to go to every property and take a looky look and do some kind of modest description of the state of that property and then start trying to match it up with what's the right coefficient? Let me be clear. When I said they had to take a look, I was not saying that in every case under every circumstance that the city municipality needs to look at the particular facility. But you're saying in every federal case. Right, because we're talking about a standard that applies to federal facilities. It's a federal facility section. And that standard is statutory, not constitutional. Well, it's statutory. Exactly. Congress is the one that drafted that standard. So what is it about the federal section that makes the federal land special over all non-federal lands that allows you to argue that for federal lands they have to go take a look, whereas I think you're suggesting that maybe for non-federal lands they don't have to do that. Well, I'll answer both of those questions. First, Congress expressly – this is a money mandating statute, right? And Congress waived sovereign immunity specific to what a reasonable service charge is and how they define it. They could have defined it in a variety of ways. It could have been a very general – they could have defined it as if you have a reasonable methodology, then that is sufficient. But instead, they were more specific. Congress waived sovereign immunity specific to showing that the charge is based upon a fair approximation of that property's proportionate contribution. That's not true for all the other assessments they do for non-federal lands? That standard is not one that – well, that standard is not one – It can be unreasonable for non-federal lands? I'm sorry, what was your – It can be unreasonable assessments for non-federal lands? No, I wouldn't say it would have to be unreasonable, but I think the question – Right, that's the point. I mean, I don't know why the word reasonable introduced in the federal section somehow allows and requires and mandates some extra level of scrutiny that the city of Wilmington has to undertake compared to all the requirements in the Clean Water Act for non-federal lands. Well, we're not arguing that in general that there's an extra level of scrutiny. What we are maintaining is that because Congress waived sovereign immunity with respect to federal facilities, the only liability that the federal government has is specific to what Congress has stated, which is that the charges must be based upon this fair approximation of their relative contribution to pollution. And so that is the standard that municipalities must meet. And in a large variety of cases, that's not problematic, I imagine, because again – Well, let me ask you about the standards. I mean, when Judge Chen started up and asked you, and I don't know that I heard an answer early on, did they have to go look at it? I think the – I'm hoping the answer is no, they didn't have to go look at it, but there's some indication you could have more discrete categories of what the property is and just compare and set standards that are more granular than what they did. Is that what you're saying? Yes. We could have them say, go look at it. I mean, what I mean is there must be something site-specific. If you mean look, I don't mean physically going to the land, but if you have some evidence as to what is on the land. Are there documents – well, I don't know if it's tax records or what – that would give you information with respect to the runoff that we need to assess the charges on? Well, I mean, in our case in chief, we would have certainly presented evidence as to the character of the land, but we didn't need to because the burden is on the plaintiff in the first instance to prove that the charge is reasonable and to prove that there's some relationship between the charges that they're based upon and the actual physical characteristics of the land. If there are records – if there are documents in the record upon which the city could have relied to provide a fair approximation, but the city didn't use them, it seems to me irrelevant. So the question is, one, is it reasonable? Because statute requires that, right? And then fair approximation. In the case of private landowners, the Constitution requires that taxation be reasonable, but it doesn't say anything about – well, interpretations require it to be reasonable, but there's nothing about fair approximation. That seems to me the core difference in this case. But it's one that – it's a difference that Congress created. Right. And so Congress mandated when federal facilities would be – can be subject to stormwater charges by municipalities. And the point here is that the city of Wilmington just failed utterly to make any connection between the federal properties in question in terms of their physical characteristics and the charges that they imposed. And that's why the trial court correctly found that those charges were not reasonable service charges under the Clean Water Act. Let me put it another way. If I, as a landowner, receive a tax bill from Fairfax County which says, here's your unreasonable tax bill, we've decided to impose an unreasonable tax, I have a constitutional claim. But if they say, here's your reasonable tax bill, but we're not saying it's a fair approximation, I, as a taxpayer, don't have a constitutional claim. Am I correct? That's my understanding. That's correct. So what if Wilmington had just done a drive-by of the federal lands and then said, okay, we know what's going on here. These are just lands that is more like a dump site for all the dredging material that the Army Corps of Engineers is dredging up. And they need a place to stick it and they're sticking it here on these lands and there's nothing else going on in these lands. Now let's go look at the 1962 Chow study. There's a lot of different categories here. What we've got here is not a park. It's not a cemetery. It's not a building in an urban area. It's not an asphalt street. It's just this basic land that hasn't been improved in any way and it's just loaded up with dredging material. Look, there's a category here that says unimproved lands. We're going to go with this coefficient right here for the Chow study unimproved land classification. Would that be wrong? Would that be good enough? If, maybe if, say Wilmington in that case, in your hypothetical, did what they did not do at trial, because this is what the trial court actually asked them, asked the expert, and I did as well, can you provide any evidence or do you have any knowledge that would connect that unimproved area? Because you're right, Dr. Chow in 1962 did establish and did studies that said that 0.1 to 0.3 is appropriate for unimproved areas. But the question is, did the city of Wilmington link that up and that study up with the vacant category, which really has no relation whatsoever to physical characteristics of the properties? Is there any linkage that you can provide? I'm sure that we're talking about the same thing. Is the vacant category assuming the same land characteristics as the Chow study? They had an expert that said yes, and here's the study, and here's why that's the case. Maybe that's the linkage that we're talking about that would make their case a lot stronger. But their expert said no, I don't know. And their case, and they provided no evidence linking those two up. You have to assume it, but that's not their burden. Their burden is not to just have the court assume. They have to actually prove that that category from the Chow study, the unimproved area, assumes the same land characteristics as the vacant. And as we heard from Commissioner Williams, their Commissioner of Public Works, the vacant category, which is based upon these tax records, could contain all kinds of different land covers, from asphalt, concrete, to wetlands and marsh. So it's kind of an amorphous category, which in and of itself shows that why are you linking this amorphous category with all different kinds of land covers to a single coefficient? That's why the burden then is, if you're relying upon a stormwater classification in which your own manual says, we're assuming they're similar, and your commissioner says, well, they're varied, they're different, they're divergent, then the burden is, well, we're going to have to do something more specific. We can't just rely upon the stormwater class. We're going to need to, as you said, drive by or have some photos or have some sort of evidence linking the properties to the coefficient that we're using. And they didn't provide that evidence at trial. Sorry, but just quickly, could you cover just briefly two issues? One, because your friend emphasized it so much, on this de novo review issue, which I'm having a hard time understanding the impact of. Anyway, a little on that, and then something on the interest, like why, I mean, maybe the Court of Federal Claims judge felt he should reach it in case we reversed him on the merits, but am I missing something, or is there, if we were to affirm on the merits, is there any reason we should do an advisory opinion on this? Okay, let me take the second issue first, because it's quick. You don't have to reach the interest issue, because our contention, and we believe it's correct, is the trial court correctly found that the government is not liable. The government's not liable if there's no interest. Is there almost a certainty that if the city loses this case, they're going to do a reassessment and you're going to get stuck with some bill? And so is it judicially efficient for us to reach the interest question here? I don't believe the court should reach the interest issue because ultimately the court finds that there's no liability and the interest issue is moved. And if there's another case in which you find that the government is liable under the same statute, perhaps it would make sense to figure out whether that interest is in fact applicable. We argue it's not, but it's an academic for this case. So Wilmington's not foreclosed from actually doing the drive-by of your government lands and then seeing perhaps what I just described and then saying, whoa, that looks super unimproved. Federal facilities are still there. It wouldn't be improperly retroactive, right, if their assessments now cover... We're fighting about 10 years worth of assessments? We're talking about from 2011 to 2021. Those are the assessments at issue. Can they go back and redo that retroactively? I don't know why not, but I don't know. Do you have a view on that? Whether or not they could submit... If it's found that they didn't do enough to establish the reasonableness of their coefficient, can they go back and say, okay, whoops, let's get another number in here, much lower perhaps, and do it again? I haven't looked at that issue specifically, but I'm not aware of whether there's any bar to them making a reassessment, but when you're talking about going back that far, I'm not certain if there are statute of limitations issues regarding that. I just have not looked specifically going forward, so I can't answer that. In terms of the de novo review, my understanding of their argument is that as they state in their brief, the trial court confused the burden of proof with the standard review. I don't believe... Well, the court did not confuse the two. Throughout the opinion, the trial court was consistent in saying that the city of Wilmington failed to show by preponderance of evidence that the charges were reasonable service charges. In terms of de novo, the court did say that this is a money-mandating case, and so at trial, these issues in terms of the EPA publication, I'm going to review de novo, meaning I am not going to give deference to the agency. If the agency said something regarding stormwater system at issue in 2008, I'm not going to defer to whatever statement that is. I'm going to review it on a clean slate. That's correct. And also, the court found that it was irrelevant because it was 2008. Were they seeking sort of Chevron deference on these documents? No, there's no... Yeah, Chevron doesn't apply. This is a de novo review by a trial court of evidence they want to present going to what the agency's views were. This entire discussion of de novos does violence to my mind because it feels... De novo, we talk about de novo in the context of one tribunal reviewing the work of another tribunal. We don't have that here. Correct. I understand. There was no agency proceeding. That was the confusion. There was no district court proceeding that the claims court was reviewing. Right. I agree, Your Honor. I think at the end of the day, they wanted the judge to view the EPA publication with a certain deference to find that it was binding. The trial court said it's not binding for the reasons that it stated in its opinion, which is one, it's the EPA discussing Wilmington's system three years before the relevant standard was enacted in 2011, so it was not speaking to whether or not the charges at issue, for instance, were reasonable under the federal facility section because that section had not been enacted in 2008. It was making a broader statement that, yes, your system... No, we understand that. You understand that more. Yes, Your Honor. All right, thank you. Thank you, Your Honor. You were almost done with your rebuttal, but to even things up, the other side went ahead and said that question's five minutes, so we'll add five minutes to rebuttal if you need it. Thank you very much, Your Honor. To answer a couple questions that were outstanding, the EPA brochure talks about fair and equitable. I should not have said reasonable. In terms of what de novo review and applicability to contemporaneous evidence, that's appendix 16 where the judge explained that he did not understand how contemporaneous evidence could be admissible in a de novo review. And speaking of de novo review, this clean slate, the issue is that the United States government, an agent of the United States government, made a factual admission, and it's admissible as admission by a party opponent. If an employee said, I shot the clerk, then that evidence stands until it's shown that it does not. This is just simply an admission. And so the court is not able to simply say, I disagree, I'm starting this clean slate, I'm not going to listen to what the evidence says. The issue is the evidence before the court said, EPA said it was fair and equitable, and there is no evidence to the contrary. It's binding until they prove that it is not. So next, the... Why did they say it was reasonably related? Did I say that again? No, I'm asking you. They didn't. What was the question? I'm sorry. Where in this EPA advisory did they say it was reasonably related? They said that the approach that was used was fair and equitable. I don't know that they used the word reasonable. Did they use the word fair and equitable? I thought they said it's a strong example of an effective cost recovery strategy. So this is appendix page... 1081. 1081. Yeah, first part. Wilmington has combined sewer system, three-step approach to establish storm utility recovery costs related to storm water management on a fair and equitable basis. To address a different question, appendix page 238, Wilmington uses over 200 different property classes to classify properties and then charge them according to that. And to answer the question about whether we could do a drive-by, the answer in Wilmington's position is that it cannot because this is not about five properties. This is about the ordinance that is used to assess the charges on all properties. And so if we drove by and determined that the charges were inappropriate for five properties, then we are now discriminating against all the other properties by not engaging in an examination of the rest of the properties. Moreover, if we did a drive-by and determined that it is a vacant property but we should charge it more, then we are in a situation under the Supreme Court's case of Washington v. United States where we are now discriminating against the United States and charging them more and treating them discriminatorily and charging them more. We can't do that. So this was my first point about the statutory requirement. Are all the standards we're applying to these federal facilities equally applicable to all the private entities that are involved in this? That's correct, Your Honor. And that is why these charges are proportionate because we apply it to everyone. We have the data on all properties. And so we understand we have an approximation based on the runoff from these five properties and other five properties. We have it all. And so that is the basis on which we use this. And I'll also say, too, that in addition to the EPA statement, we also had the testimony of a woman who is an expert, and the court was clear. When the court said... I thought the court said that basically this vacant land classification and the tax records is a bit of a black box. We really don't know what all the different things that can qualify for Delaware tax purposes what constitutes a vacant land. And so so many, a whole potpourri of different properties could be dumped into this category that it really starts to break down the whole notion that we can just use it as a proxy for something called unapproved lands in the Chow study. So first of all, Your Honor, there's a presumption that the government records are prepared correctly. There's no evidence in the record. That's true, but we don't know. We still don't know what we don't know about the vacant land classification and what that entails. We don't know because the burden is on the challenger to come forward with evidence to show that they're incorrect. That's assuming the burden's on you to establish that using these available property tax records is a good proxy for figuring out a coefficient. Let's say that seems going far afield. That's a little apples and oranges to say that these property land use records can be used for stormwater runoff coefficients. That feels, you know, a little far afield. So now it's on you to explain why can we use this generic vacant land label as a proxy. So why is it? The reason is because the evidence in the record from our expert established that these records are quite the same. There was some damaging testimony from your expert, though. That said, essentially, I have no idea how to combine these two things. We have no idea whether something in vacant land will actually be an unimproved area in the child's time. We are assuming it. Well, I would say it's not an assumption, it's an inference. And this is circumstantial evidence, and the court was required to take that into account. And our expert, the testimony we were talking about before Commissioner Williams, she said the quote was that there are differences in terms of land cover and sizes. And she answered affirmatively, not because of the land cover, but because of the size. And so there is no evidence that the land cover in these properties is different. There's no evidence. Boy, that's not how I read her testimony. The question was... There were a number of questions related to this. Right, I understand. Time is up, so do you have one closing remark, sir? Just finally, Your Honor, that a lot of the court's conclusions are based on speculation, which is not evidence. Thank you. Thank you.